IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYCO FIRE PRODUCTS, L.P. AND TYCO INTERNATIONAL PLC, | : | CIVIL ACTION NO. _____ |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| CONBRACO INDUSTRIES, INC., BRIAN RAGONE, DONALD RUSSELL, MICHAEL BLAIR, KENNETH COPELAND, and MICHAEL BEDZYK, | : | |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiffs, Tyco Fire Products, L.P. ("TFP") and Tyco International plc ("TI") (collectively, "Plaintiffs"), by their undersigned counsel, bring this action against Conbraco Industries, Inc. ("Conbraco"), Brian Ragone ("Ragone"), Donald Russell ("Russell"), Michael Blair ("Blair"), Kenneth Copeland ("Copeland"), and Michael Bedzyk ("Bedzyk") for: (1) Tortious Interference With Contracts against Defendant Conbraco; (2) Breach of a Contract against Defendant Ragone; (3) Breach of Fiduciary Duty against Defendant Ragone; (4) Breach of a Contract against Defendant Russell; (5) Breach of Fiduciary Duty against Defendant Russell; (6) Breach of a Contract against Defendant Blair; (7) Breach of Fiduciary Duty against Defendant Blair; (8) Breach of a Contract against Defendant Copeland; (9) Breach of Fiduciary Duty against Defendant Copeland; (10)  Breach of a Contract against Defendant Bedzyk; (11) Breach of Fiduciary Duty against Defendant Bedzyk; and (12) Violation of the Pennsylvania Uniform Trade Secrets Act (12 Pa. C.S.A. § 5301 *et seq.*) and similar laws of any other State in which Defendants do business against all Defendants.  Plaintiffs seek damages, attorneys' fees

and costs, exemplary damages, prejudgment interest and injunctive relief to enjoin Defendants from continuing to engage in the unlawful activities described herein.   In support hereof, Plaintiffs aver as follows:

## PARTIES

1.      Plaintiff TFP is a limited partnership organized and existing under the laws of Delaware, and located at 1400 Pennbrook Parkway, Lansdale, PA 19446.  TFP is owned by two Delaware limited liability companies – Fire Products GP Holding, LLC and Central Sprinkler LLC.  Fire Products GP Holding, LLC is owned by Central Sprinkler LLC, which is owned by Tyco International Management Company, LLC, a Nevada limited liability company. Tyco International Management Company, LLC is owned by Tyco Fire & Security US Holdings LLC, a Delaware limited liability company.  Tyco Fire & Security US Holdings LLC is owned by Tyco Fire & Security (US) Management, Inc., which is incorporated under the laws of the state of Nevada with its principal place of business at 9 Roszel Road, Princeton, NJ 08540. Accordingly, TFP's citizenship exists in Delaware, Nevada, and New Jersey.

2.      Plaintiff TI is an international public limited company organized and existing under the laws of Ireland with its principal place of business in Cork, Ireland.

3.      Upon information and belief, Defendant Conbraco Industries, Inc. is a corporation incorporated in North Carolina with its principal place of business at 701 Matthews-Mint Hill Road, Matthews, NC 28105.

4.      Upon information and belief, Defendant Brian Ragone is a Pennsylvania citizen and resident of 4838 S. Hedgerow Drive, Allentown, Pennsylvania 18103.

5.      Upon information and belief, Defendant Donald Russell is an Ohio citizen and resident of 5653 Barronsmore Way, Dublin, OH 43016.

6.      Upon information and belief, Defendant Michael Blair is an Ohio citizen and resident of 907 Fair Oaks Avenue, SW, North Canton, OH 44720.

7.      Upon information and belief, Defendant Kenneth Copeland is an Arizona citizen and resident of 13578 W. Post Drive, Surprise, AZ 85374.

8.      Upon information and belief, Defendant Michael Bedzyk is an Ohio citizen and resident of 1169 Nautilus Pl, Westerville, OH 43082.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to Title 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue is proper in this District pursuant Title 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

### *Plaintiffs Tyco Fire Products, L.P. and Tyco International plc*

11.      TFP is a worldwide leader in designing and providing fire protection product solutions to a wide range of industries including, but not limited to, government facilities, educational institutions, pharmaceutical companies, and other commercial and industrial businesses.

12.     TFP has invested substantial resources and time over many years to develop its business and national customer base to promote its goodwill and reputation in the fire protection products industry.

13.     TFP provides fire protection product solutions on a nationwide basis.

14.     TI is a diversified, global company with its principal place of business in Cork, Ireland.  TI, by and through its subsidiaries and affiliates, is in the business of providing fire protection and detection products and services, vales and controls, and security products and services.

15.     TFP has developed and acquired substantial Confidential Information, Proprietary Information and Trade Secrets relating to the fire products protection business, including but not limited to customer lists, methods of pricing, price lists, special requirements of customers, methods of servicing customers, marketing, sales and business strategies, sales, competitor and market intelligence, capital investments, technical innovations, discoveries, system designs, technical enhancements, and any other information of a similar nature (collectively referred to as "TYCO's Confidential and Trade Secrets Information").

16.     TYCO's Confidential and Trade Secret Information has independent economic value and is not generally known to others who would be able to derive economic value from them.

17.     TYCO's Confidential and Trade Secret Information is not readily attainable by proper means from outside TFP.  This information is protected by TFP as part of its

regular business practices through various means including, without limitation, by the means of restrictive covenants included in its employment agreements.

18.     The vast majority of TYCO's Confidential and Trade Secret Information is maintained at TFP's corporate offices in Lansdale, Pennsylvania, located in the Eastern District of Pennsylvania.

19.     Some of TFP's computer servers containing TYCO's Confidential and Trade Secret Information are located in Lansdale, Pennsylvania, located in the Eastern District of Pennsylvania.

### Defendant Conbraco Industries, Inc.

20.     Defendant Conbraco is a competitor of Plaintiffs that sells competing fire protection products.

21.     Specifically, Defendant Conbraco sells a line of products referred to as Apollo products, which includes backflow preventers, which are mechanical water valves. Conbraco's backflow preventers compete with mechanical backflow preventers sold by Plaintiffs.

22.     Former TFP's Director of Sales Defendant Brian Ragone terminated his employment with TFP on July 25, 2014 and shortly thereafter began employment with Defendant Conbraco as Vice President, Global Sales and Marketing.   Upon information and belief, Defendant Ragone's employment position with Defendant Conbraco is substantially similar to his former position with TFP.

23.     Defendant Ragone agreed to post-employment contractual obligations in his TYCO International Ltd. 2012 Stock and Incentive Plan Agreement with Plaintiffs ("Stock Agreement"), a true and correct copy of which is attached hereto as Exhibit A.   Specifically, Defendant Ragone agreed to the following:

### 12.     Forfeiture of Award; Confidentiality; Non-Solicitation; Agreement to Reimburse Company.

\* \* \*

(b)     You agree that during your employment with the Company or its Subsidiaries, and thereafter, you will not disclose confidential or proprietary information, or trade secrets, related to any business of the Company or the Subsidiary.  If the Committee determines, in its sole discretion, that at any time after the Grant Date and prior to the second anniversary of your Termination of Employment you (i) disclosed business confidential or proprietary information related to any business of the Company or Subsidiary or (ii) have entered into an employment or consultation arrangement (including any arrangement for employment or service as an agent, partner, stockholder, consultant, officer or director) with any entity or person engaged in a business, which arrangement would likely (in the sole judgment of the Committee) result in the disclosure of business confidential or proprietary information related to any business of the Company or a Subsidiary to a business that is competitive with any Company or Subsidiary business as to which you have had access to business strategic or confidential information, and the Committee has not approved the arrangement in writing, then, except as prohibited by law, any unvested Restricted Units will immediately be rescinded, and you will forfeit any rights you have with respect to these Restricted Units as of the date of the Committee's determination.

Except as prohibited by law, you further agree that during your employment with the Company or its Subsidiaries, and for the two year period thereafter, you will not, directly or indirectly, on your own behalf or on behalf of another (i) solicit, recruit, aid or induce any employee of the Company or any of its Subsidiaries to leave their employment with the Company or its Subsidiaries in order to accept employment with or render services to another person or entity unaffiliated with the Company or its Subsidiaries, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of the Company or any of its Subsidiaries to purchase goods or services then sold by the Company or its Subsidiaries from another person or entity, or assist or aid any other persons or entity in

identifying or soliciting any such customer, or (iii) otherwise interfere with the relationship of the Company or any of its Subsidiaries with any of its employees, customers, agents, or representatives.

Irreparable injury will result to the Company, and to its business, in the event of a breach by you of your covenant of non-solicitation under this Agreement. Therefore, in the event of a breach of this covenant, in the sole discretion of the Company, any of your unvested Restricted Units shall be immediately rescinded and you will forfeit any rights you have with respect thereto. Furthermore, by accepting this award, in the event of such a breach, upon demand by the Company, you hereby agree and promise immediately to deliver to the Company the number of Shares (or, in the discretion of the Committee, the cash value of said shares) you received for Restricted Units that vested or were delivered during the period beginning six months prior to your Termination of Employment and ending on the six-month anniversary of your Termination of Employment.

24.     During his ten years of employment with TFP, Defendant Ragone had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by a restrictive covenant of Non-Disclosure of TYCO Confidential and Trade Secret Information.

25.     Defendant Ragone used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Director of Sales.

26.     Upon information and belief, Defendant Conbraco was aware, or should have been aware, of Defendant Ragone's post-contractual obligations owed to Plaintiffs upon hiring Defendant Ragone or shortly thereafter.

27.     Upon information and belief, Defendants Conbraco and Ragone, willfully and maliciously attempted, and is attempting, to unfairly compete with Plaintiffs through Tortious Interference with Contract and Misappropriation of Plaintiffs' Trade Secrets.

-7-

***Defendant Brian Ragone***

     28.    Defendant Ragone started his employment with Plaintiffs on June 1, 2004. At the time of his departure, he was a Director of Sales for TFP.

     29.    Defendant Ragone was hired as a Regional Sales Manager, Mechanical and promoted in 2006 to National Sales Director, Mechanical.  By the time he terminated his employment on July 25, 2014, Defendant Ragone was a Director of Sales.  A true and correct copy of Defendant Ragone's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit B.

     30.    While employed by TFP, Defendant Ragone sold mechanical backflow preventers on behalf of TFP.

     31.    In consideration of his employment, Defendant Ragone agreed to certain post-employment contractual obligations in his Stock Agreement, a true and correct copy of which is attached hereto as Exhibit A and described in Paragraph 23 above.

     32.    During his ten years of employment with TFP, Defendant Ragone had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information and Non-Solicitation.

     33.    Defendant Ragone used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Director of Sales.

#### Defendant Donald Russell

34.    Defendant Russell started his employment with Plaintiffs on November 2, 2004.  At the time of his departure, he was a Director of Sales for TFP.

35.    When Defendant Russell was hired in November 2004, he was a Sales Representative.  In 2006, Defendant Russell was promoted to Regional Sales Manager and in 2009 to Director, Mechanical Sales.  According to his LinkedIn profile, Defendant Russell claims he was "[r]esponsible for TFP[]'s largest customers for the Americas business."  A true and correct copy of Defendant Russell's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit C.

36.    While employed by TFP, Defendant Russell sold mechanical backflow preventers on behalf of TFP.

37.    In consideration of his employment, Defendant Russell agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit D.  Specifically, Defendant Russell agreed to the following:

> 2.    **Obligation of Confidentiality.**  I agree, both during and after my employment with Tyco Fire Products, to keep Tyco Fire Products Confidential Information secret.  I agree not to disclose, record, or in any way make use of Tyco Fire Products Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a Tyco Fire Products employee and under conditions that protect the Tyco Fire Products Confidential Information.  I also agree not to remove or otherwise transmit Tyco Fire Products Confidential Information from Tyco Fire Products' premises or possession without the explicit consent of an authorized Tyco Fire Products representative.  Further, I agree to keep confidential third party information (including, but not

limited to, information received by Tyco Fire Products from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between Tyco Fire Products and the third party and to adhere to the terms of the agreement between Tyco Fire Products and the third party.

6.      **Non-Solicitation.** I acknowledge that information, data, or material is highly confidential concerning Tyco Fire Products' customers, affiliates, and employees.  I agree, both during my employment and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of Tyco Fire Products, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with Tyco Fire Products, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

11.     **Injunctive Relief.**  Given the nature of the Tyco Fire Products Confidential Information and the parties' current discussions, I acknowledge that Tyco Fire Products may be irreparably damaged by any unauthorized disclosure of any Tyco Fire Products Confidential Information.  Without prejudice to the rights and remedies otherwise available to Tyco Fire Products, Tyco Fire Products shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of this Agreement by me.

12.     **Non-Competition.**  I agree, subject to the conditions hereinafter stated, that I will not, within twelve months after leaving Tyco Fire Products' employ, engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business.  As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of Tyco Fire Products; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of Tyco Fire Products, or (3) which involves activities that would likely result in my eventual disclosure of Tyco Fire Products Confidential Information if I were employed by said business.

38.     During his ten years of employment with TFP, Defendant Russell had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

39.     Defendant Russell used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Director of Sales.

40.     Upon information and belief, Defendant Russell is Vice President, Commercial and Industrial Sales for Defendant Conbraco.

### *Defendant Michael Blair*

41.     Defendant Blair started his employment with Plaintiffs on October 6, 2008.  At the time of his departure, he was Territory Manager – Mechanical (Ohio and Pennsylvania) for TFP.

42.     When Defendant Blair was hired in October 2008, he was a Sales Representative.  In January 2012, Defendant Blair was promoted to Territory Manager. According to his LinkedIn profile, Defendant Blair claims he "[m]aintaine[d] and secure[d] Tyco product specifications at the Engineer and owner level," "[d]evelope[d] annual business plan strategies, and "buil[t] and maintain[ed] good customer relationships" at TFP.  A true and correct copy of Defendant Blair's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit E.

43.     While employed by TFP, Defendant Blair sold mechanical backflow preventers on behalf of TFP.

44.     In consideration of his employment, Defendant Blair agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit F. Specifically, Defendant Blair agreed to the following:

> 2.     **Obligation of Confidentiality.** I agree, both during and after my employment with TFBP, to keep TFBP Confidential Information secret. I agree not to disclose, record, or in any way make use of TFBP Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a TFBP employee and under conditions that protect the TFBP Confidential Information. I also agree not to remove or otherwise transmit TFBP Confidential Information from TFBP's premises or possession without the explicit consent of an authorized TFBP representative. Further, I agree to keep confidential third party information (including, but not limited to, information received by TFBP from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between TFBP and the third party and to adhere to the terms of the agreement between TFBP and the third party.

> 6.     **Non-Solicitation.** I acknowledge that information, data, or material is highly confidential concerning TFBP's customers, affiliates, and employees. I agree, both during my employment and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of TFBP, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with TFBP, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

> 11.     **Injunctive Relief.** Given the nature of the TFBP Confidential Information and the parties' current discussions, I acknowledge that TFBP may be irreparably damaged by any unauthorized disclosure of any TFBP Confidential Information. Without prejudice to the rights and remedies otherwise available to

-12-

TFBP, TFBP shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of this Agreement by me.

12.   **Non-Competition.**   I agree, subject to the conditions hereinafter stated, that I will not, within twelve months after leaving TFBP's employ, engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business. As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of TFBP; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of TFBP, or (3) which involves activities that would likely result in my eventual disclosure of TFBP Confidential Information if I were employed by said business.

45.   During his six years of employment with TFP, Defendant Blair had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

46.   Defendant Blair used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Territory Manager.

47.   Upon information and belief, Defendant Blair is a Regional Sales Manager in the Ohio area for Defendant Conbraco.

### *Defendant Kenneth Copeland*

48.   Defendant Copeland started his employment with Plaintiffs on March 31, 2008. At the time of his departure, he was Territory Manager -- Mechanical (Colorado, Utah, Arizona, and New Mexico) for TFP.

49.     When Defendant Copeland was hired in March 2008, he was a Sales Representative.   In January 2010, Defendant Copeland was promoted to Territory Manager. According to his LinkedIn profile, Defendant Copeland claims he developed "sales plans and marketing strategies" and built "strong relationships with distribution company executives" while at TFP.   A true and correct copy of Defendant Copeland's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit G.

50.     While employed by TFP, Defendant Copeland sold mechanical backflow preventers on behalf of TFP.

51.     In consideration of his employment, Defendant Copeland agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit H.   Specifically, Defendant Merino agreed to the following:

> 2.     **Obligation of Confidentiality.**   I agree, both during and after my employment with TFBP, to keep TFBP Confidential Information secret.   I agree not to disclose, record, or in any way make use of TFBP Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a TFBP employee and under conditions that protect the TFBP Confidential Information.   I also agree not to remove or otherwise transmit TFBP Confidential Information from TFBP's premises or possession without the explicit consent of an authorized TFBP representative.   Further, I agree to keep confidential third party information (including, but not limited to, information received by TFBP from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between TFBP and the third party and to adhere to the terms of the agreement between TFBP and the third party.

> 6.     **Non-Solicitation.**   I acknowledge that information, data, or material is highly confidential concerning TFBP's customers, affiliates, and employees.   I agree, both during my employment

and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of TFBP, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with TFBP, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

11.   **Injunctive Relief.**   Given the nature of the TFBP Confidential Information and the parties' current discussions, I acknowledge that TFBP may be irreparably damaged by any unauthorized disclosure of any TFBP Confidential Information. Without prejudice to the rights and remedies otherwise available to TFBP, TFBP shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of this Agreement by me.

12.   **Non-Competition.**   I agree, subject to the conditions hereinafter stated, that I will not, within twelve months after leaving TFBP's employ, engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business. As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of TFBP; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of TFBP, or (3) which involves activities that would likely result in my eventual disclosure of TFBP Confidential Information if I were employed by said business.

52.   During his six and a half years of employment with TFP, Defendant Copeland had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

53.   Defendant Copeland used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Territory Manager.

54.     Upon information and belief, Defendant Copeland is Industrial Market Manager for Defendant Conbraco.

### *Defendant Michael Bedzyk*

55.     Defendant Bedzyk started his employment with Plaintiffs in November 2006.  At the time of his departure, he was Sales Manager – Central Region for TFP.

56.     When Defendant Bedzyk was hired by TFP in 2006, he was a Territory Manager.  In September 2009, he was promoted to Global Product Manager, Mechanical where, according to his LinkedIn profile, Defendant Bedzyk claims he was involved in new product development and business planning and development.   A true and correct copy of Defendant Bedzyk's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit I.  In February 2010, Defendant Bedzyk was promoted to Sr. Global Product Manager, Mechanical.  In July 2011, Defendant Bedzyk was promoted to Eastern Division Sales Manager, Mechanical.  And finally, in April 2013, Defendant Bedzyk was promoted to Sales Manager – Central Region.

57.     While employed by TFP, Defendant Bedzyk sold mechanical backflow preventers on behalf of TFP.

58.     In consideration of his employment, Defendant Bedzyk agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit J. Specifically, Defendant Bedzyk agreed to the following:

> 2.     **Obligation of Confidentiality.**  I agree, both during and after my employment with TFBP, to keep TFBP Confidential

Information secret.  I agree not to disclose, record, or in any way make use of TFBP Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a TFBP employee and under conditions that protect the TFBP Confidential Information.  I also agree not to remove or otherwise transmit TFBP Confidential Information from TFBP's premises or possession without the explicit consent of an authorized TFBP representative.  Further, I agree to keep confidential third party information (including, but not limited to, information received by TFBP from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between TFBP and the third party and to adhere to the terms of the agreement between TFBP and the third party.

6.     **Non-Solicitation.**  I acknowledge that information, data, or material is highly confidential concerning TFBP's customers, affiliates, and employees.  I agree, both during my employment and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of TFBP, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with TFBP, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

11.    **Injunctive Relief.**    Given the nature of the TFBP Confidential Information and the parties' current discussions, I acknowledge that TFBP may be irreparably damaged by any unauthorized disclosure of any TFBP Confidential Information.  Without prejudice to the rights and remedies otherwise available to TFBP, TFBP shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of this Agreement by me.

12.    **Non-Competition.**   I agree, subject to the conditions hereinafter stated, that I will not, within twelve months after leaving TFBP's employ, engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business.  As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of TFBP; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of

TFBP, or (3) which involves activities that would likely result in my eventual disclosure of TFBP Confidential Information if I were employed by said business.

59.     During his eight years of employment with TFP, Defendant Bedzyk had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

60.     Defendant Bedzyk used TYCO Confidential and Trade Secret Information in the regular performance of his duties as Sales Manager.

61.     Upon information and belief, Defendant is Regional Sales Director in the Ohio area for Defendant Conbraco.

## Phillip Merino

62.     Phillip Merino ("Merino") started his employment with Plaintiffs on March 23, 2009.   At the time of his departure, he was Vertical Market Sales Manager -- Mechanical (West Coast) for TFP.

63.     When Merino was hired in March 2009, he was a Project Management Analyst.   In October 2010 Merino was promoted to Product Manager, Global Fire Grooved and in April 2012 he was promoted to Manager, Product Management.   According to his LinkedIn profile, Merino claims he had "[g]lobal responsibility for the Fire Grooved product line for which he "[o]verhauled the entire US pricing structure" and "worked extensively on development of new & innovative product."   A true and correct copy of Merino's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit K.   On June

14, 2013, Merino left TFP, but he was re-hired on January 1, 2014 as Vertical Market Sales Manager – Mechanical (West Coast).

64.     While employed by TFP, Merino sold mechanical backflow preventers on behalf of TFP.

65.     In consideration of his employment, Merino agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit L.   Specifically, Merino agreed to the following:

> 2.     **Obligation of Confidentiality.**  I agree, both during and after my employment with TFBP, to keep TFBP Confidential Information secret.  I agree not to disclose, record, or in any way make use of TFBP Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a TFBP employee and under conditions that protect the TFBP Confidential Information.  I also agree not to remove or otherwise transmit TFBP Confidential Information from TFBP's premises or possession without the explicit consent of an authorized TFBP representative.  Further, I agree to keep confidential third party information (including, but not limited to, information received by TFBP from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between TFBP and the third party and to adhere to the terms of the agreement between TFBP and the third party.
>
> 6.     **Non-Solicitation.**  I acknowledge that information, data, or material is highly confidential concerning TFBP's customers, affiliates, and employees.  I agree, both during my employment and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of TFBP, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with TFBP, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

11.   **Injunctive Relief.**   Given the nature of the TFBP
Confidential Information and the parties' current discussions, I
acknowledge that TFBP may be irreparably damaged by any
unauthorized disclosure of any TFBP Confidential Information.
Without prejudice to the rights and remedies otherwise available to
TFBP, TFBP shall be entitled to seek equitable relief, including an
injunction or specific performance, in the event of any breach of
the provisions of this Agreement by me.

12.   **Non-Competition.**   I agree, subject to the conditions
hereinafter stated, that I will not, within twelve months after
leaving TFBP's employ, engage or enter into employment by, or
into self-employment or gainful occupation as, a Competing
Business, or act directly or indirectly as an advisor, consultant,
agent, or representative for a Competing Business. As used herein,
"Competing Business" means a business (1) which is engaged in
the manufacture, sale or other disposition of a product or service
that is in direct competition with a product or service, whether
existing or under development, of TFBP; (2) which has under
development a product or service that is in direct competition with
a product or service, whether existing or under development, of
TFBP, or (3) which involves activities that would likely result in
my eventual disclosure of TFBP Confidential Information if I were
employed by said business.

66.   During his five years of employment with TFP, Merino had access to, and

acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was

bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO

Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

67.   Merino used TYCO Confidential and Trade Secret Information in the

regular performance of his duties as Marketing Manager.

68.   Upon information and belief, Merino is a Backflow Market Manager –

West for Defendant Conbraco.

*John Rankel*

69.     John Rankel ("Rankel") started his employment with Plaintiffs in October 2004.  At the time of his departure, he was a National Sales Manager.

70.     When Rankel was hired in October 2004, he claims he was, according to his LinkedIn profile, a Western Division Manager.  A true and correct copy of Rankel's LinkedIn profile as published to the public on January 21, 2015 is attached hereto as Exhibit M.  In August 2014, he was promoted to National Sales Manager.

71.     While employed by TFP, Rankel sold mechanical backflow preventers on behalf of TFP.

72.     In consideration of his employment, Rankel agreed to certain post-employment contractual obligations in his "Employee Confidentiality and Non-Competition Agreement," a true and correct copy of which is attached hereto as Exhibit N.  Specifically, Rankel agreed to the following:

> 2.     **Obligation of Confidentiality.**  I agree, both during and after my employment with Tyco Fire Products, to keep Tyco Fire Products Confidential Information secret.  I agree not to disclose, record, or in any way make use of Tyco Fire Products Confidential Information for so long as such information remains non-public, except as required in the performance of my duties and responsibilities as a Tyco Fire Products employee and under conditions that protect the Tyco Fire Products Confidential Information.  I also agree not to remove or otherwise transmit Tyco Fire Products Confidential Information from Tyco Fire Products' premises or possession without the explicit consent of an authorized Tyco Fire Products representative.  Further, I agree to keep confidential third party information (including, but not limited to, information received by Tyco Fire Products from customers, prospective customers, and suppliers) that is covered by a confidentiality agreement between Tyco Fire Products and the

third party and to adhere to the terms of the agreement between Tyco Fire Products and the third party.

6.    **Non-Solicitation.** I acknowledge that information, data, or material is highly confidential concerning Tyco Fire Products' customers, affiliates, and employees. I agree, both during my employment and for a period of twelve months thereafter, not to directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of Tyco Fire Products, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with Tyco Fire Products, or to purchase any products from a Competing Business (as defined below) either on my own behalf or on behalf of any other person or entity.

11.   **Injunctive Relief.** Given the nature of the Tyco Fire Products Confidential Information and the parties' current discussions, I acknowledge that Tyco Fire Products may be irreparably damaged by any unauthorized disclosure of any Tyco Fire Products Confidential Information. Without prejudice to the rights and remedies otherwise available to Tyco Fire Products, Tyco Fire Products shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of any breach of the provisions of this Agreement by me.

12.   **Non-Competition.** I agree, subject to the conditions hereinafter stated, that I will not, within twelve months after leaving Tyco Fire Products' employ, engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business. As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of Tyco Fire Products; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of Tyco Fire Products, or (3) which involves activities that would likely result in my eventual disclosure of Tyco Fire Products Confidential Information if I were employed by said business.

73.   During his ten years of employment with TFP, Rankel had access to, and acquired, significant knowledge of TYCO Confidential and Trade Secret Information and was

bound, and continues to be bound, by restrictive covenants of Non-Disclosure of TYCO Confidential and Trade Secret Information, Non-Solicitation, and Non-Competition.

74.     Rankel used TYCO Confidential and Trade Secret Information in the regular performance of his duties as National Sales Manager.

75.     Upon information and belief, Rankel is now a National Sales Manager – Press Products for Defendant Conbraco.

### *Defendants Wrongfully Solicit Plaintiffs' Employees and Customers, Compete with Plaintiffs, and Use TYCO Confidential and Trade Secret Information*

76.     Upon information and belief, Defendants engaged in a concerted effort to build a new sales team under Defendant Ragone's direction on behalf of Defendant Conbraco. Through these efforts, Defendants have sought to steal Plaintiffs' employees, customers, and TYCO Confidential and Trade Secret Information.

77.     Specifically, Defendants Conbraco and Ragone have contacted, or caused others to contact on their behalf, Plaintiffs' employees, including, without limitation, Defendants Russell, Blair, Copeland, and Bedzyk, as well as Merino, Rankel, and probably others, in order to induce them to join Defendant Conbraco in breach of their lawful and existing legal employment agreements with Plaintiffs (collectively referred to as the "Employment Agreements").

78.     Defendants Conbraco and Ragone were aware, or should have been aware, of the post-employment obligations the Plaintiffs' employees owed to Plaintiff.

79.     Defendants have, directly or indirectly, contacted or caused others to contact on their behalf, Plaintiffs' customers to induce them to cease their customer relationship with the Plaintiffs including, without limitation, multiple TFP distributors.

80.     Upon information and belief, as a result of Defendants Conbraco's and Ragone's wrongful solicitations, Merino terminated his employment with TFP as its Territory Manager-Mechanical (West Coast) on November 25, 2014.   Upon information and belief, Merino has taken a position with Defendant Conbraco that is substantially similar to the one he had with Plaintiffs.

81.     Merino owes post-employment obligations to Plaintiffs and, upon information and belief, is in violation of those obligations while employed by Defendant Conbraco.

82.     Upon information and belief, as a result of Defendants Conbraco's and Ragone's wrongful solicitations, Rankel terminated his employment with TFP as its National Sales Manager on November 26, 2014.   Upon information and belief, Rankel has taken a position with Defendant Conbraco that is substantially similar to the one he had with Plaintiffs.

83.     Rankel owes post-employment obligations to Plaintiffs and, upon information and belief, is in violation of those obligations while employed by Defendant Conbraco.

84.     Upon information and belief, on or about November 2014, Rankel solicited Alex Perez and Tony Cada, both TFP sales employees, to join him at Conbraco.

85.     Upon information and belief, as a result of Defendants Conbraco's and Ragone's wrongful solicitations, on December 5, 2014, Defendants Russell, Blair and Copeland terminated their employment with Plaintiffs.  Upon information and belief, Defendants Russell, Blair and Copeland have taken positions with Defendant Conbraco that are substantially similar to the positions they held with Plaintiffs.

86.     Defendants Russell, Blair and Copeland each owes post-employment obligations to Plaintiffs and, upon information and belief, each of them is in violation of those obligations while employed by Defendant Conbraco.

87.     Upon information and belief, as a result of Defendants Conbraco's and Ragone's wrongful solicitations, Defendant Bedzyk terminated his employment with TFP as its Sales Manager on December 22, 2014.  Upon information and belief, Defendant Bedzyk has taken a position with Defendant Conbraco that is substantially similar to the one he had with Plaintiffs.

88.     Defendant Bedzyk owes post-employment obligations to Plaintiffs and, upon information and belief, is in violation of those obligations while employed by Defendant Conbraco.

*__Plaintiffs Request Defendants To Stop Breaching Their Obligations To Plaintiffs But They Refuse To Do So__*

89.     Upon learning of Defendants Conbraco's, Ragone's, Russell's, Blair's, Copeland's, as well as Merino's wrongful conduct, on December 9, 2014, by and through their counsel of record, Plaintiffs sent letters to Defendants Ragone, Russell, Blair, and Copeland, as well as Merino with a carbon copy thereof to Defendant Conbraco's General Counsel, providing

actual notice to Plaintiffs' former-employees of their ongoing duties and obligations under their Employment Agreements, enclosing their Employment Agreements, and demanding they confirm their commitment to comply with their contractual obligations and refrain working for Defendant Conbraco. A true and correct copy of each letter is attached hereto as Exhibits O-S.

90.     Therefore, at least as of December 9, 2014, Defendant Conbraco had actual notice of the Employment Agreements, and restrictive covenants therein, that Defendants Ragone, Russell, Blair, and Copeland, as well as Merino entered as employees of Plaintiffs.

91.     Defendants Russell, Blair, and Copeland, as well as Merino failed to comply with Plaintiffs' requests and continue to work for Defendant Conbraco.

92.     Defendant Conbraco continued to hire away TFP employees with restrictive covenants and hired Defendant Bedyzk after receipt of the December 9 letter copies.

93.     Furthermore, upon information and belief, and in violation of their respective Employment Agreements, Defendants Ragone, Russell, Blair, Copeland, and Bedzyk, as well as Merino and Rankel, have taken steps that either threatened to cause the misappropriation and/or unauthorized disclosure of TYCO Confidential and Trade Secret Information to Plaintiffs' competitor -- Defendant Conbraco.

94.     Upon information and belief, Defendants Ragone, Russell, Blair, Copeland, and Bedzyk, as well as Merino and Rankel have disclosed and/or will inevitably disclose TYCO Confidential and Trade Secret Information in the performance of their employment duties for Defendant Conbraco and/or by solicitation of one or more of Plaintiffs' employees and/or existing customers.

95.     Upon information and belief, Defendants intentionally, willfully, and maliciously breached, and continue to breach, lawful and existing Employment Agreements and have disclosed or will disclose TYCO Confidential and Trade Secret Information that has been misappropriated by them thereby causing and continuing to cause irreparable harm to Plaintiffs' existing business and business relations.

96.     In addition, upon information and belief, Defendant Conbraco knew or should have known of the lawful and existing restrictive covenants in the Employment Agreements entered by and between Plaintiffs and certain of its other current or former employees (including, without limitation, Defendants Ragone, Russell, Blair, Copeland, and Bedzyk, as well as Merino and Rankel).

97.     Nevertheless, upon information and belief, Defendant Conbraco continues to intentionally interfere with Plaintiffs' lawful and existing contracts, which contain restrictive covenants of Non-Competition, Non-Solicitation, and/or Non-Disclosure provisions similar to those entered by Defendants Ragone, Russell, Blair, Copeland, and Bedzyk, as well as Merino and Rankel, and which have been entered with certain of its other current and former employees, and thereby knowingly and willfully has and continues to interfere with Plaintiffs' competitive advantage in its lawful and existing contracts.

## COUNT I – TORTIOUS INTERFERENCE WITH CONTRACTS
### (AGAINST DEFENDANT CONBRACO)

98.     Plaintiffs incorporate by reference Paragraph 1 through 97 of this Complaint as if set forth fully herein.

99.     Plaintiffs have a reasonable expectation of an economic and competitive advantage through one or more of its Employment Agreements including, without limitation, the Employment Agreements identified above and attached hereto which include restrictive covenants of Non-Competition, Non-Solicitation, and/or Non-Disclosure of TYCO Confidential and Trade Secret Information for Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel.

100.    Defendant Conbraco knew, should have known, has at all times been aware, and/or has been informed that Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel have ongoing obligations of Non-Competition, Non-Solicitation, and/or Non-Disclosure of TYCO Confidential and Trade Secret Information.

101.    Through the inevitable and/or willful and malicious disclosure of TYCO Confidential and Trade Secret Information by Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel to Defendant Conbraco, at the knowledge and inducement of Defendant Conbraco to commit such acts, Defendant Conbraco knowingly, maliciously, and tortiously interfered with Plaintiffs' competitive advantage in its lawful and existing contracts.

102.    Upon information and belief, Defendant Conbraco now possesses, or will soon possess, knowledge of TYCO Confidential and Trade Secret Information in violation of one or more of those Employment Agreements.

103.    Through the inevitable and/or willful and malicious solicitation by Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel of Plaintiffs' customers on behalf of or for the benefit of Defendant Conbraco, at the knowledge and inducement of Defendant Conbraco to commit such acts, Defendant Conbraco knowingly,

maliciously, and tortiously interfered with Plaintiffs' competitive advantage in its lawful and existing contracts.

104.    Through the inevitable and/or willful and malicious solicitation by Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel of Plaintiffs' employees on behalf of or for the benefit of Defendant Conbraco, at the knowledge and inducement of Defendant Conbraco to commit such acts, Defendant Conbraco knowingly, maliciously, and tortiously interfered with Plaintiffs' competitive advantage in its lawful and existing contracts.

105.    By employing and affiliating with Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel, to use their knowledge of TYCO Confidential and Trade Secret Information to compete with Plaintiffs, solicit Plaintiffs' customers, and solicit Plaintiff's employees, Defendant Conbraco has knowingly, maliciously, and tortiously interfered with, and threatens to continue to interfere with, Plaintiffs' rights under one or more of the Employment Agreements.

106.    Moreover, Defendant Conbraco know, should have known, and/or has at all times been aware, and/or has been informed that certain other current and former employees of Plaintiffs also have such ongoing obligations under one or more of their respective employment agreements entered with Plaintiffs (or their subsidiaries or affiliates).

107.    Even so, through the willful and malicious solicitation by Conbraco of Plaintiffs' current and former employees, and inducement of Defendant Conbraco to have these current and former employees commit acts in breach their restrictive covenants, Defendant

Conbraco knowingly, maliciously, and tortiously has interfered, and continues to interfere, with Plaintiffs' competitive advantage in its lawful and existing contracts.

108.   The intent of Defendant Conbraco has been and is to harm Plaintiffs' rights under the Employment Agreements entered with Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel as well as the employment agreements entered with certain other current and former employees.

109.   The Employment Agreements entered by Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel, specifically, and the employment agreements entered by Plaintiffs' employees, generally, are lawful and existing, and the restrictive covenants therein protect the legitimate interests of Plaintiffs, impose no undue hardship on Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel or any other of Plaintiffs' current or former employees, and are not injurious to the public.

110.   There is no privilege or justification for the interference by Defendant.

111.   Unless Defendant Conbraco is enjoined by the Court, Plaintiffs will suffer irreparable harm to its business interests as a result of the unlawful tortious interference with contracts.

112.   The conduct of Defendant Conbraco in this regard has been and continues to be malicious, wanton, willful, outrageous, and in bad faith.

## COUNT II – BREACH OF CONTRACT

## (AGAINST DEFENDANT RAGONE)

113.    Plaintiffs incorporate by reference Paragraph 1 through 112 of this Complaint as if set forth fully herein.

114.    The Employment Agreement between Defendant Ragone and Plaintiffs is a valid and binding agreement.

115.    Pursuant to the terms of the Agreement, Defendant Ragone agreed to, among other things, restrictive covenants of Non-Solicitation and Non-Disclosure of TYCO Confidential and Trade Secret Information, set forth above and in the exhibits attached hereto.

116.    Defendant Ragone has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' employees for his own benefit or the benefit of Defendant Conbraco.

117.    Defendant Ragone has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' customers for his own benefit or the benefit of Defendant Conbraco.

118.    Defendant Ragone has breached, and continues to breach, the restrictive covenants in the Employment Agreement by the actual or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

119.    As a result of Defendant Ragone's breach of one or more of his obligations in the Employment Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Ragone is enjoined by this Court.

## COUNT III – BREACH OF FIDUCIARY DUTY

### (AGAINST DEFENDANT RAGONE)

120.   Plaintiffs incorporate by reference Paragraph 1 through 119 of this Complaint as if set forth fully herein.

121.   Defendant Ragone works for Plaintiffs' competitor – Defendant Conbraco.

122.   Defendant Ragone duly signed and executed his Employment Agreement while employed with TFP which establishes a fiduciary relationship between Defendant Ragone and Plaintiffs.

123.   Defendant Ragone had, and continues to have, a fiduciary relationship with Plaintiffs whereby Defendant Ragone was, and continues to be, under a duty to act for the benefit of Plaintiffs on matters within the scope of his relationship with Plaintiffs (e.g., relating to the ongoing terms and conditions of his Employment Agreement).

124.   Defendant Ragone breached his common law and contractual fiduciary duty to Plaintiffs by, without limitation, breaching his responsibilities and contractual duties under the Employment Agreement by engaging in wrongful solicitation of Plaintiffs' employees and customers, and by the actual and willful and/or malicious, or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

125.   As a result Defendant Ragone's breach of his fiduciary duty, under both common law and contractual requirements, to Plaintiffs, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Ragone is enjoined by this Court and is ordered to cease all conduct in breach of this agreement.

## COUNT IV – BREACH OF CONTRACT

### (AGAINST DEFENDANT RUSSELL)

126.    Plaintiffs incorporate by reference Paragraph 1 through 125 of this Complaint as if set forth fully herein.

127.    The Employment Agreement between Defendant Russell and Plaintiffs is a valid and binding agreement.

128.    Pursuant to the terms of the Agreement, Defendant Russell agreed to, among other things, restrictive covenants of Non-Competition, Non-Solicitation and Non-Disclosure of TYCO Confidential and Trade Secret Information, set forth above and in the exhibits attached hereto.

129.    Defendant Russell has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, at least, his ongoing employment with Plaintiffs' direct competitor – Defendant Conbraco.

130.    Defendant Russell has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' employees for his own benefit or the benefit of Defendant Conbraco.

131.    Defendant Russell has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' customers for his own benefit or the benefit of Defendant Conbraco.

132.     Defendant Russell has breached, and continues to breach, the restrictive covenants in the Employment Agreement by the actual or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

133.     As a result of Defendant Russell's breach of one or more of his obligations in the Employment Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Russell is enjoined by this Court.

## COUNT V – BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT RUSSELL)

134.     Plaintiffs incorporate by reference Paragraph 1 through 133 of this Complaint as if set forth fully herein.

135.     Defendant Russell works for Plaintiffs' competitor -- Defendant Conbraco.

136.     Defendant Russell duly signed and executed his Employment Agreement while employed with TFP which establishes a fiduciary relationship between Defendant Russell and Plaintiffs.

137.     Defendant Russell had, and continues to have, a fiduciary relationship with Plaintiffs whereby Defendant Russell was, and continues to be, under a duty to act for the benefit of Plaintiffs on matters within the scope of his relationship with Plaintiffs (e.g., relating to the ongoing terms and conditions of his Employment Agreement).

138.     Defendant Russell breached his common law and contractual fiduciary duty to Plaintiffs by, without limitation, breaching his responsibilities and contractual duties under the Employment Agreement by competing with Plaintiffs, soliciting Plaintiffs' employees

-34-

and customers, and the actual and willful and/or malicious, or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

139.   As a result Defendant Russell's breach of his fiduciary duty, under both common law and contractual requirements, to Plaintiffs, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Russell is enjoined by this Court and is ordered to cease all conduct in breach of this agreement.

## COUNT VI – BREACH OF CONTRACT
## (AGAINST DEFENDANT BLAIR)

140.   Plaintiffs incorporate by reference Paragraph 1 through 139 of this Complaint as if set forth fully herein.

141.   The Employment Agreement between Defendant Blair and Plaintiffs is a valid and binding agreement.

142.   Pursuant to the terms of the Agreement, Defendant Blair agreed to, among other things, restrictive covenants of Non-Competition, Non-Solicitation and Non-Disclosure of TYCO Confidential and Trade Secret Information, set forth above and in the exhibits attached hereto.

143.   Defendant Blair has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, at least, his ongoing employment with Plaintiffs' direct competitor – Defendant Conbraco.

144.    Defendant Blair has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' employees for his own benefit or the benefit of Defendant Conbraco.

145.    Defendant Blair has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' customers for his own benefit or the benefit of Defendant Conbraco.

146.    Defendant Blair has breached, and continues to breach, the restrictive covenants in the Employment Agreement by the actual or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

147.    As a result of Defendant Blair's breach of one or more of his obligations in the Employment Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Blair is enjoined by this Court.

## COUNT VII – BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT BLAIR)

148.    Plaintiffs incorporate by reference Paragraph 1 through 147 of this Complaint as if set forth fully herein.

149.    Defendant Blair works for Plaintiffs' competitor – Defendant Conbraco.

150.    Defendant Blair duly signed and executed his Employment Agreement while employed with TFP which establishes a fiduciary relationship between Defendant Blair and Plaintiffs.

151.    Defendant Blair had, and continues to have, a fiduciary relationship with Plaintiffs whereby Defendant Blair was, and continues to be, under a duty to act for the benefit of Plaintiffs on matters within the scope of his relationship with Plaintiffs (e.g., relating to the ongoing terms and conditions of his Employment Agreement).

152.    Defendant Blair breached his common law and contractual fiduciary duty to Plaintiffs by, without limitation, breaching his responsibilities and contractual duties under the Employment Agreement by competing with Plaintiffs, soliciting Plaintiffs' employees and customers, and the actual and willful and/or malicious, or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

153.    As a result Defendant Blair's breach of his fiduciary duty, under both common law and contractual requirements, to Plaintiffs, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Blair is enjoined by this Court and is ordered to cease all conduct in breach of this agreement.

## COUNT VIII – BREACH OF CONTRACT
### (AGAINST DEFENDANT COPELAND)

154.    Plaintiffs incorporate by reference Paragraph 1 through 153 of this Complaint as if set forth fully herein.

155.    The Employment Agreement between Defendant Copeland and Plaintiffs is a valid and binding agreement.

156.    Pursuant to the terms of the Agreement, Defendant Copeland agreed to, among other things, restrictive covenants of Non-Competition, Non-Solicitation and Non-

Disclosure of TYCO Confidential and Trade Secret Information, set forth above and in the exhibits attached hereto.

157.    Defendant Copeland has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, at least, his ongoing employment with Plaintiffs' direct competitor – Defendant Conbraco.

158.    Defendant Copeland has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' employees for his own benefit or the benefit of Defendant Conbraco.

159.    Defendant Copeland has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' customers for his own benefit or the benefit of Defendant Conbraco.

160.    Defendant Copeland has breached, and continues to breach, the restrictive covenants in the Employment Agreement by the actual or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

161.    As a result of Defendant Copeland's breach of one or more of his obligations in the Employment Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Copeland is enjoined by this Court.

## COUNT IX – BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT COPELAND)

162.    Plaintiffs incorporate by reference Paragraph 1 through 161 of this Complaint as if set forth fully herein.

163.    Defendant Copeland works for Plaintiffs' competitor – Defendant Conbraco.

164.    Defendant Copeland duly signed and executed his Employment Agreement while employed with TFP which establishes a fiduciary relationship between Defendant Copeland and Plaintiffs.

165.    Defendant Copeland had, and continues to have, a fiduciary relationship with Plaintiffs whereby Defendant Copeland was, and continues to be, under a duty to act for the benefit of Plaintiffs on matters within the scope of his relationship with Plaintiffs (e.g., relating to the ongoing terms and conditions of his Employment Agreement).

166.    Defendant Copeland breached his common law and contractual fiduciary duty to Plaintiffs by, without limitation, breaching his responsibilities and contractual duties under the Employment Agreement by competing with Plaintiffs, soliciting Plaintiffs' employees and customers, and the actual and willful and/or malicious, or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

167.    As a result Defendant Copeland's breach of his fiduciary duty, under both common law and contractual requirements, to Plaintiffs, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Copeland is enjoined by this Court and is ordered to cease all conduct in breach of this agreement.

## COUNT X – BREACH OF CONTRACT

## (AGAINST DEFENDANT BEDZYK)

168.     Plaintiffs incorporate by reference Paragraph 1 through 167 of this Complaint as if set forth fully herein.

169.     The Employment Agreement between Defendant Bedzyk and Plaintiffs is a valid and binding agreement.

170.     Pursuant to the terms of the Agreement, Defendant Bedzyk agreed to, among other things, restrictive covenants of Non-Competition, Non-Solicitation and Non-Disclosure of TYCO Confidential and Trade Secret Information, set forth above and in the exhibits attached hereto.

171.     Defendant Bedzyk has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, at least, his ongoing employment with Plaintiffs' direct competitor – Defendant Conbraco.

172.     Defendant Bedzyk has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' employees for his own benefit or the benefit of Defendant Conbraco.

173.     Defendant Bedzyk has breached, and continues to breach, the restrictive covenants in the Employment Agreement through, directly or indirectly, his solicitation of one or more Plaintiffs' customers for his own benefit or the benefit of Defendant Conbraco.

174.   Defendant Copeland has breached, and continues to breach, the restrictive covenants in the Employment Agreement by the actual or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

175.   As a result of Defendant Bedzyk's breach of one or more of his obligations in the Employment Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Bedzyk is enjoined by this Court.

## COUNT XI – BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT BEDZYK)

176.   Plaintiffs incorporate by reference Paragraph 1 through 175 of this Complaint as if set forth fully herein.

177.   Defendant Bedzyk works for Plaintiffs' competitor – Defendant Conbraco.

178.   Defendant Bedzyk duly signed and executed his Employment Agreement while employed with TFP which establishes a fiduciary relationship between Defendant Bedzyk and Plaintiffs.

179.   Defendant Bedzyk had, and continues to have, a fiduciary relationship with Plaintiffs whereby Defendant Bedzyk was, and continues to be, under a duty to act for the benefit of Plaintiffs on matters within the scope of his relationship with Plaintiffs (e.g., relating to the ongoing terms and conditions of his Employment Agreement).

180.   Defendant Bedzyk breached his common law and contractual fiduciary duty to Plaintiffs by, without limitation, breaching his responsibilities and contractual duties under the Employment Agreement by competing with Plaintiffs, soliciting Plaintiffs' employees

and customers, and the actual and willful and/or malicious, or inevitable, disclosure of TYCO Confidential and Trade Secret Information to Defendant Conbraco.

181.     As a result Defendant Bedzyk's breach of his fiduciary duty, under both common law and contractual requirements, to Plaintiffs, Plaintiffs have suffered, and will continue to suffer, irreparable harm unless Defendant Bedzyk is enjoined by this Court and is ordered to cease all conduct in breach of this agreement.

## COUNT XII – VIOLATION OF THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT (12 Pa. C.S.A. § 5301 et seq.)

### (AGAINST ALL DEFENDANTS)

182.     Plaintiffs incorporate by reference Paragraphs 1 through 181 of this Complaint as if set forth fully herein.

183.     TFP is the owner and developer of TYCO Confidential and Trade Secret Information constituting confidential information and trade secrets, including but not limited to, (a) TFP's technical information such as but not limited to methods, know-how, formulae, compositions, processes, discoveries, machines, inventions, computer programs and similar items or research projects, (b) TFP's business information such as but not limited to information about cost, purchasing, profits, market, sales or lists of customers, and/or (c) TFP's future developments such as but not limited to research and development or future marketing or merchandising.

184.     Plaintiffs provided Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel with access to TYCO Confidential and Trade Secret

Information in confidence and as a result of their employment under terms and conditions outlined in one or more of the Employment Agreements.

185.   Plaintiffs have made, and continue to make, reasonable efforts to maintain the secrecy of TYCO Confidential and Trade Secret Information acquired by them including, but not limited to, requiring employees who are permitted access to TYCO Confidential and Trade Secret Information to execute agreements legally obligating them to maintain the secrecy and proper treatment of TYCO Confidential and Trade Secret Information.

186.   TYCO Confidential and Trade Secret Information acquired by Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel derives actual and potential economic value from not being generally available to the public or Plaintiffs' competitors.

187.   Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel contractually had and continue to have a duty to maintain the secrecy of the TYCO Confidential and Trade Secret Information.

188.   Upon information and belief, Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel have used and/or disclosed or will inevitably use and/or disclosure TYCO Confidential and Trade Secret Information to Plaintiffs' competitor – Defendant Conbraco – at the encouragement of Defendant Conbraco, and will likely continue to use and/or disclose TYCO Confidential and Trade Secret Information without permission, justification, license, or consent, and in violation of Plaintiffs' rights therein, unless enjoined by this Court.

189.    Defendants' actions were, and are, harmful, willful, malicious, and with the intent to use the TYCO Confidential and Trade Secret Information to the benefit of Defendant Conbraco and to the detriment of Plaintiffs.

190.    Unless this Court enjoins all Defendants from using the TYCO Confidential and Trade Secret Information, orders Defendants to return any and all of the TYCO Confidential and Trade Secret Information in his possession, custody, or control, and enjoins all Defendants from any subsequent use of the TYCO Confidential and Trade Secret Information on their own or on behalf of another, Plaintiffs will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.    Enjoining Defendant Conbraco from employing Defendants Russell, Blair, Copeland, Merino, Rankel, and Bedzyk either directly or indirectly;

b.    Enjoining Defendant Conbraco from using Defendants to solicit Plaintiffs' customers and/or employees either directly or indirectly;

c.    Permanently enjoining Defendants Ragone, Russell, Blair, Copeland, and Bedzyk from violating their Employment Agreements, including, but not limited to, the following restrictive covenants:

(1)    directly or indirectly solicit, recruit, hire, or encourage any employees or consultants to leave the employ of Plaintiffs, nor to directly or indirectly encourage any customers, suppliers, or affiliates to refrain from or to stop doing business with Plaintiffs, or to purchase any products from a Competing Business (as defined below); or

-44-

(2)      (as applied to Defendants Russell, Blair, Copeland, and Bedzyk) engage or enter into employment by, or into self-employment or gainful occupation as, a Competing Business, or act directly or indirectly as an advisor, consultant, agent, or representative for a Competing Business.  As used herein, "Competing Business" means a business (1) which is engaged in the manufacture, sale or other disposition of a product or service that is in direct competition with a product or service, whether existing or under development, of Plaintiffs; (2) which has under development a product or service that is in direct competition with a product or service, whether existing or under development, of Plaintiffs, or (3) which involves activities that would likely result in eventual disclosure of TYCO Confidential and Trade Secret Information if employed by said business;

d.      Permanently enjoining Defendants Ragone, Russell, Blair, Copeland, and Bedzyk from misappropriating, using, and/or disclosing any TYCO Confidential and Trade Secret Information;

e.      Enjoining Defendant Conbraco from soliciting, requesting, or using any TYCO Confidential and Trade Secret Information disclosed, obtained, and/or acquired, directly or indirectly, from Defendants Ragone, Russell, Blair, Copeland and Bedzyk, as well as Merino and Rankel or any other of Plaintiffs' current or former employees;

f.      Compensatory, consequential and punitive damages in an amount to be determined at a Trial of this matter;

g.      Attorneys' fees as permitted by relevant statutes (including, without limitation, the Pennsylvania Uniform Trade Secrets Act) or otherwise; and,

h.      Such other relief the Court may deem just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on each issue triable thereby.

Dated:  January 23, 2015

M. Kelly Tilery, Esquire
Brian A. Berkley, Esquire
Lindsay Schoonmaker, Esquire
PEPPER HAMILTON LLP
(A Pennsylvania Limited Liability Partnership)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Telephone:  215.981.4000
Fax:  215.981.4750
Tileryk@pepperlaw.com
berkleyb@pepperlaw.com
schoonmakerl@pepperlaw.com

## VERIFICATION

I, Andrea Goodrich, verify and declare as follows:

I am the Vice President and Corporate Secretary of Tyco International plc ("TI") and am authorized to make this Verification on behalf of TI. I have read the Verified Complaint and know its contents.

I verify under penalty of perjury that the matters set forth in the foregoing Verified Complaint as they relate to TI are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

Dated: 1/23/15

Andrea Goodrich

<u>VERIFICATION</u>

I, _Michael Mottice_, verify and declare as follows:

I am the _Director of Sales_, of Tyco Fire Products, L.P. ("TFP") and am authorized to make this Verification on behalf of TFP.  I have read the Verified Complaint and know its contents.

I verify under penalty of perjury that the matters set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.


Dated: _1/23/2015_